1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8   Peter David Maassen,                )
                                         )
9            Petitioner,                 )   CIV 13-00188 PHX SRB (MEA)
                                         )
10           v.                          )   REPORT AND RECOMMENDATION
                                         )
11  Charles L. Ryan, et al.,             )
                                         )
12           Respondents.                )
                                         )
13  _____)

14  TO THE HONORABLE SUSAN R. BOLTON:

15          On January 28, 2013, Petitioner, proceeding pro se,

16  docketed a petition seeking a writ of habeas corpus pursuant to

17  28 U.S.C. § 2254.  Respondents filed an Answer to Petition for

18  Writ of Habeas Corpus ("Answer") (Doc. 9) on May 10, 2013.

19  Petitioner filed a reply to the answer to his petition on June

20  6, 2013.  See Doc. 10.

21          **I Procedural History**

22          A Maricopa County grand jury indictment returned March

23  12, 2009, charged Petitioner with one count of shoplifting as a

24  continuing criminal episode, a Class 5 felony, and one count of

25  trafficking in stolen property in the first degree, a Class 2

26  felony.  See Answer, Exh. C.  With regard to the charges

27  asserted in the indictment, the Arizona Court of Appeals'

28  memorandum decision affirming Petitioner's convictions and

1 sentences found the following facts:

2       During the last quarter of 2008, J.B., a
retail crime investigator for Target, noticed
3 a trend of high-end Logitech universal remote
control devices missing from stores in Mesa,
4 Scottsdale, Gilbert and Marana. Surveillance
video recorded between October 13, 2008, and
5 November 20, 2008, revealed numerous
instances of [Petitioner] entering a Target
6 store, standing near the displayed remotes,
and when alone, cutting the packaged remotes
7 from the locked displays. The videos showed
[Petitioner] cutting open the plastic
8 clamshell containers to remove the remotes
and exiting the stores apparently
9 empty-handed. To avoid setting off alarms
when leaving the stores, [Petitioner] walked
10 around the security antennas located inside
the exit doors. On one occasion, J.B.
11 personally witnessed [Petitioner] engaged in
this furtive behavior.
12       On November 20, 2008, Mesa police officers
arrived at [Petitioner's] home in Apache
13 Junction to arrest him for the thefts.
[Petitioner] did not answer the door. An
14 officer turned off the electricity to the
home, and [Petitioner], wearing only his
15 boxer shorts, came outside to investigate.
[Petitioner] was handcuffed and brought
16 inside to retrieve clothing. Sergeant Langley
noticed a large number of packaged used
17 consumer electronics. [Petitioner] explained
that he purchased the equipment from various
18 retail outlets and refurbished the items
before selling them on eBay. Further
19 investigation revealed [Petitioner's] eBay
account where he offered 14 unpackaged
20 Logitech remote controls for sale. Police
obtained a search warrant for [Petitioner's]
21 home, and during the subsequent search,
officers seized a number of new remotes that
22 looked similar to the ones on [Petitioner's]
eBay account.

23

24 Id., Exh. P at 2-3 (footnote omitted).

25       On January 11, 2010, Petitioner's defense counsel filed

26 a motion to suppress evidence arising from the search of

27 Petitioner's residence.  In his motion to suppress, Petitioner

28                                  -2-

argued that he did not consent to the police entering his bedroom closet to retrieve clothing for him following his arrest, and that, without the information obtained from the protective sweep of his home, the search warrant was not supported by probable cause. Id., Exh. D.

An evidentiary hearing was conducted March 5, 2010, regarding the motion to suppress. The trial court found that the protective sweep performed by the police was unlawful. Id., Exh. F at 39. However, the state trial court also found that "[t]he question on whether to suppress these items goes to whether or not they were seized during the course of the valid search warrant." Id., Exh. F.

The state court concluded:

> I find if you excise out the information gleaned from the protective sweep, it still contains probable cause. Let me say further, I do believe there is substantial evidence within the affidavit, and presented today, that the defendant did invite individual officers into his home so that he could gather clothing, that he directed them that they could obtain clothing from his bedroom, and that it was reasonable for them to go into the master bedroom closet to obtain that clothing. I further find that even if on later review of another court it's determined that such a consent was not given, that this affidavit nevertheless contains probable cause to search, even without the consent to look into the master bedroom closet. Because I believe even without viewing the remotes in the closet, the affidavit[] still contains probable cause.

Id., Exh. F at 39-40. Accordingly, the state trial court denied the motion to suppress. Id., Exh. F at 40.

-3-

1    During Petitioner's trial the first count of the
2  indictment was reduced to allege shoplifting of property with a
3  value of at least $1,000.00, a Class 6 felony.  Id., Exh. I at
4  51-58.  Petitioner testified at his trial.  The jury found
5  Petitioner guilty of shoplifting property with a combined value
6  of $1,000.00 or more, and guilty of trafficking in stolen
7  property in the first degree.  Id., Exh. L at 3; Exh. J at 115.
8  Petitioner's counsel filed a motion seeking a new trial, which
9  was denied, and a motion seek a judgment of acquittal, which was
10 denied.

11    The trial court found the state had proved five
12 historical prior felony convictions, two of which were used in
13 Petitioner's sentencing.  Id., Exh. K at 16-18.  On August 11,
14 2010, the trial court sentenced Petitioner to mitigated
15 concurrent terms of three years imprisonment on Count 1 and
16 fourteen years imprisonment on Count 2.  Id., Exh. K at 28.

17    Petitioner took a timely direct appeal of his
18 convictions and sentences.  On March 27, 2012, the Arizona Court
19 of Appeals affirmed Petitioner's convictions and sentences.
20 Id., Exh. P.   The Arizona Supreme Court denied review in
21 Petitioner's direct appeal on October 18, 2012.  Id., Exh. R.

22    On November 13, 2012, Petitioner initiated an action
23 for state post-conviction relief pursuant to Rule 32, Arizona
24 Rules of Criminal Procedure.  Id., Exh. S.   The state trial
25 court appointed counsel to represent Petitioner in his Rule 32
26 proceedings.  Id., Exh. T.   On March 11, 2013, Petitioner's
27 counsel notified the state court that he was "unable to discern

28                                    -4-

any colorable claim upon which to base" claims for relief in Petitioner's Rule 32 action. *Id.*, Exh. U.  On April 1, 2013, the state trial court allowed Petitioner until approximate July 1, 2013, to file a brief outlining his claims for post-conviction relief.  *Id.*, Ex. X.   Accordingly, Petitioner's state action for post-conviction relief is still pending in the state courts.

Respondent further aver:

On March 25, 2013, after the superior court extended the time for Petitioner to file a pro se PCR petition, Petitioner filed a "motion to vacate this PCR without baring [sic] the claim of ineffective assistance of counsel." (Ex. W.) In that filing, Petitioner sought to "vacate[]" the proceeding "since no petitions have been prepa[red]" and to be permitted to raise a different claim, presumably ineffective assistance of counsel. (Id.) The superior court ruled that Petitioner's request amounted to a request for a stay, which was not authorized by the rules governing PCR proceedings. (Ex. X, at 1.) Although the superior court denied that request accordingly, the court stated that it would "give the [Petitioner] a generous extension of time to submit a petition for post-conviction relief due to the circumstances." (Id.) The court gave Petitioner an additional 90 days, or until approximately July 1, 2013, to file his PCR petition. (Id.) As of the date of this filing, Petitioner has not filed any PCR petition. *Thus far, Petitioner has not specified his PCR claim(s) in the superior court; however, based on his March 25, 2013, presumably any such claim would be based on ineffective assistance of counsel—a claim that is not raised in his habeas petition.* Accordingly, his pending PCR proceeding does not appear to be relevant to the claims raised in this habeas proceeding.

Answer at 5 n.2.

To the extent Petitioner is raising claims already exhausted in the state courts, i.e., claims raised in his direct appeal, this habeas petition is timely. Petitioner does not ask the Court to stay his petition pending the resolution of any claims for ineffective assistance of counsel which he may be exhausting in the state courts. To decide the claims raised in this petition would require Petitioner to file a "second or successive" petition when or if he decides to bring his ineffective assistance of counsel claims in a federal habeas action.

In his habeas petition, Petitioner asserts:

1. Petitioner asserts the Mesa Police Department violated his Fourth Amendment rights by searching his home without probable cause, and without a warrant for his arrest or search warrant. Petitioner states: "Further did not have a warrant to kill the power to my home, flush me out" [and] arrest me."

2. Petitioner contends his Sixth Amendment rights were violated because the state was allowed to amend Count I of the indictment.

3. Petitioner contends his federal and state constitutional rights were violated because the police came onto his property without a search warrant or a warrant for his arrest. Petitioner alleges that, after entering onto his property, the police did not announce their presence.

4. Petitioner contends his Fourth Amendment rights were violated because the police used a trick to flush him out of his

-6-

1  house and then entered and searched his house without a warrant
2  or his permission.

3      Petitioner asks the Court to reverse his convictions on
4  Count I and Count II and to order that the evidence seized as a
5  result of the search be suppressed.

6      Respondents argue that the Arizona Court of Appeal's
7  decision denying Petitioner's Fourth Amendment claims was not
8  clearly contrary to nor an unreasonable application of federal
9  law.   Respondents further assert that the Arizona Court of
10 Appeals' decision with regard to Petitioner's Sixth Amendment
11 claim was not clearly contrary to or an unreasonable application
12 of clearly established federal law.

13          **II Standard of review**

14     The Court may not grant a writ of habeas corpus to a
15 state prisoner on a claim adjudicated on the merits in state
16 court proceedings unless the state court reached a decision
17 contrary to clearly established federal law, or the state court
18 decision was an unreasonable application of clearly established
19 federal law.   See 28 U.S.C. § 2254(d); Carey v. Musladin, 549
20 U.S. 70, 75, 127 S. Ct. 649, 653 (2006); Musladin v. Lamarque,
21 555 F.3d 834, 838 (9th Cir. 2009).   "Under AEDPA, a federal
22 court may not grant a petition for a writ of habeas corpus
23 unless the state court's adjudication on the merits was
24 'contrary to, or involved an unreasonable application of,
25 clearly established Federal law, as determined by the Supreme
26 Court of the United States.'"   Lafler v. Cooper, 132 S. Ct.
27 1376, 1390 (2012), quoting 28 U.S.C. § 2254(d)(1).

28                          -7-

A state court decision is contrary to federal law if it applied a rule contradicting the governing law of United States Supreme Court opinions, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. See, e.g., Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005); Yarborough v. Alvarado, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004); Runningeagle v. Ryan, 686 F.3d 758, 785 (9th Cir. 2012), cert. denied, 133 S. Ct. 2766 (2013). For example, a state court's decision is considered contrary to federal law if the state court erroneously applied the wrong standard of review or an incorrect test to a claim. See Knowles v. Mirzayance, 556 U.S. 111, 121, 129 S. Ct. 1411, 1419 (2009); Wright v. Van Patten, 552 U.S. 120, 124-25, 128 S. Ct. 743, 746-47 (2008); Runningeagle, 686 F.3d at 784-85; Norris v. Morgan, 622 F.3d 1276, 1288 (9th Cir. 2010), cert. denied, 131 S. Ct. 1557 (2011). See also Frantz v. Hazey, 533 F.3d 724, 737 (9th Cir. 2008); Bledsoe v. Bruce, 569 F.3d 1223, 1233 (10th Cir. 2009).

A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies a governing rule but applies it to a new set of facts in a way that is objectively unreasonable, or if it extends, or fails to extend, a clearly established legal principle to a new set of facts in a way that is objectively unreasonable. See McNeal v. Adams, 623 F.3d 1283, 1287-88 (9th Cir. 2010). When considering such a claim, "a habeas court must determine what arguments or theories supported or ... could have supported, the

-8-

state court's decision; and then it must ask where it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." Ramdass v. Angelone, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120 (2000). See also Cheney v. Washington, 614 F.3d 987, 994 (9th Cir. 2010). However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered *objectively* unreasonable. See, e.g., Renico v. Lett, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010); Runningeagle, 686 F.3d at 785. An unreasonable application of law is different from an incorrect one. See Renico, 130 S. Ct. at 1862; Cooks v. Newland, 395 F.3d 1077, 1080 (9th Cir. 2005). "That test is an objective one and does not permit a court to grant relief simply because the state court might have incorrectly applied federal law to the facts of a certain case." Adamson v. Cathel, 633 F.3d 248, 255–56 (3d Cir. 2011).

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140,[ ] (2004). And as this Court has explained,

1

2

3

4

5

6

7

 "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid.</u> "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S.Ct. 1411, 1413–14, [ ] (2009) (internal quotation marks omitted).

8 <u>Harrington</u>, 131 S. Ct. at 786.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

 The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta," of the Supreme Court's decisions "as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S. Ct. 1495 [ ] (2000). A state court's decision is "contrary to" this body of law if it applies a rule that contradicts the governing law articulated by the Supreme Court or arrives at a result different than that reached by the Supreme Court in a case with materially indistinguishable facts. <u>Id.</u> at 405–06, 529 U.S. 362, 120 S. Ct. 1495, [ ].
 A decision involves an "unreasonable application" of clearly established federal law if it "identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413, 529 U.S. 362, 120 S. Ct. 1495 [ ]. The Supreme Court has emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." <u>Id.</u> at 410, 529 U.S. 362, 120 S. Ct. 1495, [ ]. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411, 529 U.S. 362, 120 S. Ct. 1495.Instead, the court must determine whether the state court's application of Supreme Court precedents was objectively unreasonable. Id. at 409, 529 U.S. 362, 120 S. Ct. 1495, [ ]. Although the Supreme Court's decisions are the focus of the unreasonable-application inquiry, we may look

28

-10-

to Ninth Circuit case law as "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law." <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 2000).

<u>Howard v. Clark</u>, 608 F.3d 563, 567–68 (9th Cir. 2010).

A lower federal court may not grant habeas relief under § 2254(d)(1) based on federal circuit court opinions; the statute requires that the particular legal point be clearly established by the Supreme Court. <u>See</u>, <u>e.g.</u>, <u>Marshall v. Rodgers</u>, 133 S. Ct. 1446, 1450-51 (2013). Accordingly, if the Supreme Court has not addressed a specific issue in its holdings, the state court's adjudication of the issue cannot be an unreasonable application of clearly established federal law. <u>See</u> <u>Stenson v. Lambert</u>, 504 F.3d 873, 881 (9th Cir. 2007), <u>citing</u> <u>Kane v. Garcia Espitia</u>, 546 U.S. 9, 10, 126 S. Ct. 407, 408 (2006). Stated another way, if the issue raised by the petitioner "is an open question in the Supreme Court's jurisprudence," the Court may not issue a writ of habeas corpus on the basis that the state court unreasonably applied clearly established federal law by rejecting the precise claim presented by the petitioner. <u>Cook</u>, 538 F.3d at 1016; <u>Crater v. Galaza</u>, 491 F.3d 1119, 1123 (9th Cir. 2007). The United States Supreme Court "has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles</u>, 129 S. Ct. at 1419, <u>citing</u> <u>Wright</u>, 552 U.S. at 124-25, 128 S. Ct. at

-11-

746-47.

Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240-41, 125 S. Ct. 2317, 2325 (2005); Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003); Runningeagle, 686 F.3d at 763 n.1; Crittenden v. Ayers, 624 F.3d 943, 950 (9th Cir. 2010); Stenson, 504 F.3d at 881; Anderson v. Terhune, 467 F.3d 1208, 1212 (9th Cir. 2006). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." Sumner v. Mata, 455 U.S. 591, 593, 102 S. Ct. 1303, 1304-05 (1982). Additionally, the United States Supreme Court has held that, with regard to claims adjudicated on the merits in the state courts, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires.  See Lafler, 132 S. Ct. 1389-90; Panetti v.

-12-

<u>Quarterman</u>, 551 U.S. 930, 953–54, 127 S.Ct. 2842, 2858–59 (2007); <u>Runningeagle</u>, 686 F.3d at 785–86; <u>Greenway v. Schriro</u>, 653 F.3d 790, 805–06 (9th Cir. 2011).

**III Analysis**

**A.   Petitioner's claims for relief**

**Petitioner's Fourth Amendment claim**s

Three of Petitioner's claims for federal habeas relief assert a violation of his Fourth Amendment right to be free of unreasonable searches and seizures.

Petitioner's defense counsel brought a motion to suppress the evidence obtained as a result of the search of Petitioner's home.  Counsel argued that the search was without a warrant and did not meet any exception to the rule that a reasonable search required a warrant.  After conducting an evidentiary hearing, the state trial court denied the motion to suppress.  Petitioner raised the constitutionality of the search and the trial court's decision regarding the motion to suppress in his direct appeal and the state appellate court found relief not warranted on these claims.

Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in the state courts.  Accordingly, pursuant to the holding of the United States Supreme Court in <u>Stone v. Powell</u>, the Court should not re-consider Petitioner's Fourth Amendment claims.

> Because we hold that <u>Stone v. Powell</u> is applicable to the claims presented by appellant, our inquiry is necessarily of limited scope. We have emphasized on more than one occasion that "Under <u>Stone</u> a federal

-13-

district court may not relitigate a fourth
amendment issue tried fully and fairly in a
state court, regardless of its view of the
correctness of the state decision." <u>Mack v.
Cupp</u>, 564 F.2d 898, 901 (9th Cir. 1977) [].
The record of the state proceedings compels
the conclusion that appellant received a full
and fair opportunity to litigate his Fourth
Amendment claims. The identical claims
pressed upon us were considered, and squarely
rejected, by the Arizona courts. The
transcript of the evidentiary hearing on the
motion to suppress alone consists of 45
typewritten pages. The issues were thoroughly
briefed at the trial level and rejected. The
briefs on appeal to the Arizona Court of
Appeals are substantial. The opinion of the
Arizona Court of Appeals is four pages long,
and it clearly indicates that appellant's
contentions were carefully considered and
squarely rejected. Appellant filed a motion
for rehearing and a supporting memorandum
which, in substance, raised the same claims.
This motion was considered and denied by a
three judge panel of the Arizona Court of
Appeals. Thereafter, appellant fully
exhausted his Arizona State post-conviction
remedies. It is clear, therefore, that
appellant was afforded a full and fair
opportunity to litigate his Fourth Amendment
claims in the state court.

<u>Abell v. Raines</u>, 640 F.2d 1085, 1088 (9th Cir. 1981).

If the state has provided a state prisoner an
opportunity for full and fair litigation of
his Fourth Amendment claim, we cannot grant
federal habeas relief on the Fourth Amendment
issue. <u>Stone v. Powell</u>, 428 U.S. 465, 494, 96
S.Ct. 3037, [] (1976). Moormann contends that
he did not have a full and fair opportunity
to litigate his warrant challenge because the
state court's factual findings are not
supported by the evidence. Moormann was
provided a full and fair opportunity to
litigate his state claims, however. He raised
the warrant issue in a pre-trial motion; the
trial court held a hearing on the issue at
which Moormann was allowed to present
evidence and examine witnesses; the trial
court made a factual finding, and
appropriately limited the admissible evidence
to that described in the warrant affidavit;

-14-

1  and the Arizona Supreme Court reviewed the
2  trial court's decision.

3  <u>Moormann v. Schriro</u>, 426 F.3d 1044, 1053 (9th Cir. 2005).

4       Because Petitioner received a full and fair opportunity
5  to litigate his Fourth Amendment claims in his state criminal
6  proceedings, the Court should not consider the merits of nor
7  grant relief on his Fourth Amendment claims.

8  **B. Petitioner's Sixth Amendment claim**

9       Petitioner contends his federal constitutional rights
10  were violated because the indictment was amended during his
11  trial to assert a lesser charge.  Petitioner raised this issue
12  in his direct appeal.  The Arizona Court of Appeals determined
13  that "amending Count 1 did not change the nature of the
14  offense." Answer, Exh. P at 11.  The state appellate court found
15  that the "amendment merely lowered the classification of the
16  offense by decreasing the value of the shoplifted items, and it
17  did away with the element regarding the frequency of alleged
18  incidences necessary to find a 'continuing criminal episode.'"
19  <u>Id.</u>, Exh. P at 11-12.  Accordingly, the court found, "the
20  amendment did not deprive [Petitioner] of his constitutional
21  right to notice." <u>Id.</u>, Exh. P at 12.  The Arizona Court of
22  Appeals further concluded that Petitioner had not met his burden
23  of establishing he was prejudiced by the amendment.

24       The Sixth Amendment requires a state defendant to be
25  adequately informed of the charges against him.  Notice and an
26  opportunity to defend against the charges as guaranteed by the
27  Sixth Amendment are an integral part of the due process

28                              -15-

protected by the Fourteenth Amendment, and are, accordingly, applicable in state prosecutions. See, e.g., Cole v. Arkansas, 333 U.S. 196, 201, 68 S. Ct. 514, 517 (1948); Stephens v. Borg, 59 F.3d 932, 934-35 & n.1 (9th Cir. 1995).

The Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusations...." Allowing the prosecution to amend an indictment at trial to enable the prosecution to seek a conviction on a charge not brought by the grand jury constitutes a denial of due process, when the defendant is not given fair notice of the criminal charges brought against him. See, e.g., DeJonge v. Oregon, 299 U.S. 353, 362, 57 S. Ct. 255, 259 (1937); Sheppard v. Rees, 909 F.2d 1234, 1236 (9th Cir. 1990). However, "deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Evans, 780 F.2d 405, 407 (4th Cir. 1985). To be entitled to relief on such a claim, the habeas petitioner must establish that they were prejudiced by the amendment of the indictment. See, e.g., Brodit v. Cambra, 350 F.3d 985, 988-89 (9th Cir. 2003).

The Arizona Court of Appeals concluded Petitioner was not entitled to relief based on the amendment of the indictment because Petitioner was not prejudiced by amendment to a lesser

-16-

charge.[1] The Arizona Court of Appeals' decision was not clearly contrary to federal law because the decision applied the correct standard to Petitioner's claim.  Additionally, the decision was not an unreasonable application of United States Supreme Court precedent regarding Sixth Amendment jurisprudence.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### IV Conclusion

The claims raised in Petitioner's timely habeas petition were raised in the state courts in a procedurally correct manner and denied on the merits by the state courts. Because Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in the state courts, the Court should not examine those claims nor grant relief thereon. Additionally, the state court decision denying Petitioner's due process claim regarding amendment of the indictment was not clearly contrary to nor an unreasonable application of federal law.

---

[1] Rule 13.5(b), Arizona Rules of Criminal Procedure, provides:

> The preliminary hearing or grand jury indictment limits the trial to the specific charge or charges stated in the magistrate's order or grand jury indictment. The charge may be amended only to correct mistakes of fact or remedy formal or technical defects, unless the defendant consents to the amendment. The charging document shall be deemed amended to conform to the evidence adduced at any court proceeding.

-17-

**IT IS THEREFORE RECOMMENDED that** Mr. Maasen's Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation

of the Magistrate Judge.

Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The undersigned recommends that, should the Report and Recommendation be adopted and, should Petitioner seek a certificate of appealability, a certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C.A § 2253(c)(2).

DATED this 27th day of August, 2013.

Mark E. Aspey
United States Magistrate Judge

-19-